## DOW v. NASON et al.

### No. 19,329; October 4, 1894.

38 Pac. 54.

**Note—Payment by Payee—Effect on Maker's Liability.**—The payee of a note, in order to be able to have it discounted, induced another person to indorse it. An extension note, which was signed by the surety, but not by the maker, was paid, for the benefit of the surety, by the payee of the original note; and both notes were marked "Paid," and delivered to him. Held, that such payment did not extinguish the original maker's liability, as it was not by a mere volunteer.

On petition for a rehearing. Denied.

BEATTY, C. J.—In his petition for a rehearing, counsel for appellant complains that his position has been misunderstood and his points left undecided. As the opinion of the department is extremely brief, it will not be improper for me to state somewhat more fully the grounds upon which I concur in the order denying a rehearing. There is perhaps a slight verbal inaccuracy in that part of the opinion which states that the principal point in the case is whether the notes of H. W. Nason were paid. The question is rather whether they were so paid as to extinguish the indebtedness of H. W. Nason, and to restore to the plaintiff, as receiver of his estate, the ownership of the $5,000 note, by which they were partly secured. The superior court found that they were not paid, but were assigned to the Pamo Water Company, with their collateral. In order to support the judgment, it is not necessary that the evidence should sustain this finding, in the broadest sense of its terms. It is sufficient if there is evidence to show that, although the notes were paid, they were paid under such circumstances as to work an assignment to the water company; and I think the evidence does fully sustain the finding, in this sense. These are the facts: Nason bought from the water company one thousand shares of its stock, and, in payment therefor, executed to Robinson, the president and trustee of the company, his note for $7,500, pledging the $5,000 note, which is in controversy here, as collateral security. The water company, being desirous of raising money, applied to the

California National Bank of San Diego to discount Nason's note, which the bank agreed to do, but only on condition that Wood and Jones, members of the corporation, should indorse the note as sureties. This they did for the benefit of the company, and the bank took an assignment of the note, with its collateral. Nason did not pay it when it became due, but, by consent of the bank, renewed it several times, the accrued interest being added to the principal, and Wood and Jones signing as sureties. The last of these renewal notes was signed by Wood and Jones as sureties, but, owing to the temporary absence of Nason from the state, was not signed by him. Pending his return the bank retained possession of it and the previous renewal note. Before Nason had an opportunity of signing the last note, the bank went into the hands of a receiver, and this accounts for the existence of two notes for the same indebtedness. One of the points contended for by appellant was that one payment of this indebtedness extinguished both notes, and he complains that this point was overlooked. It was not necessary to notice this point, for the simple reason that there appears to be no controversy as to the fact that both notes were paid in the same sense. But the question, and the only material question, in the case, is whether they were so paid as to extinguish the indebtedness of Nason. Payment was made by the water company to the receiver of the bank. Both notes were marked "Paid," and delivered to the water company by the receiver, who at the same time transferred to the company the $5,000 note held as collateral. The contention of appellant is that the water company made this payment as a mere volunteer, and that the effect was to extinguish the indebtedness of Nason. He bases this contention upon the legal proposition that no man can be made debtor for money paid to his use unless he has requested the payment. But the fault in this argument is that the water company was not a volunteer. The sureties on the notes had become such for its benefit and accommodation. It was under a moral obligation certainly, and perhaps legally bound, to protect or reimburse them; and the circumstances under which it paid the notes fully warrant the conclusion that the payment was made in their behalf, and for their benefit. It was payment by one who was virtually, though not nominally, Nason's surety; and neither he nor his successor has any right to question the

arrangement under which the company has merely discharged its own obligation, for really there is no substantial merit or equity in the claim of appellant, seeking, as he does, to reap where he has not sown, or, in other words, to subject another to loss in order that he may gain. In this view the findings of the superior court as to nonpayment and assignment of Nason's notes are fully sustained. They were paid as to the bank, but not as between Nason and the water company. They were not assigned to the water company by the receiver of the bank, but the water company was subrogated to the rights of the bank, and the collateral security transferred by the statute: Civ. Code, sec. 2349. This being so, the question as to the authority of the bank's receiver to assign the note becomes wholly immaterial.